**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellant,*

v.

LENNY LYLE CAIN,
            *Defendant-Appellee,*

and

JERRY RONALD FLINCHUM,
            *Defendant.*

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

THE CRIMINAL JUSTICE ACT
PANEL FOR THE DISTRICT OF
MARYLAND,
            *Amicus Supporting Appellee.*

No. 07-4631

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Richard D. Bennett, District Judge.
(1:06-cr-00551-RDB)

Argued: March 26, 2008

Decided: May 9, 2008

Before WILLIAMS, Chief Judge, TRAXLER, Circuit Judge, and
David C. NORTON, Chief United States District Judge for the
District of South Carolina, sitting by designation.

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

Reversed and remanded by published opinion. Chief Judge Williams
wrote the opinion, in which Judge Traxler and Judge Norton joined.

## COUNSEL

**ARGUED:** Mythili Raman, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellant. Idus Jerome Daniel, Jr., Washington, D.C., for Appellee. Martin Stanley Himeles, Jr., ZUCKERMAN & SPAEDER, L.L.P., Baltimore, Maryland, for Amicus Supporting Appellee. **ON BRIEF:** Rod J. Rosenstein, United States Attorney, Christopher J. Romano, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellant. William K. Meyer, ZUCKERMAN & SPAEDER, L.L.P., Baltimore, Maryland, for Amicus Supporting Appellee.

---

## OPINION

WILLIAMS, Chief Judge:

The Government appeals the district court's order granting Lenny Lyle Cain's motion to suppress inculpatory statements that he made during an interview with law enforcement officers on November 30, 2006. The district court suppressed the statements because it concluded that the Government violated Cain's Sixth Amendment rights by interviewing him without first contacting his court-appointed attorney. The district court held that suppression was also warranted because the Government's interview of Cain violated the Criminal Justice Act ("CJA"), 18 U.S.C.A. § 3006A (West 2000 & Supp. 2006), and the District of Maryland's implementation of its CJA plan (the "Plan"), which require that eligible criminal defendants be provided counsel as soon as possible after the initiation of adversarial proceedings.

We reverse. Because Cain initiated the interview during which he gave the inculpatory statements to the law enforcement agents, his Sixth Amendment rights were not violated. Moreover, no "violation" of the CJA or the Plan occurred, for the CJA and Plan provisions requiring speedy appointment of counsel for eligible criminal defendants do not prevent those defendants from voluntarily initiating contact with law enforcement officers and making inculpatory statements to those officers in the absence of the appointed CJA attorney.

## I.

Because Cain prevailed on his suppression motion, we review the facts in the light most favorable to him. *United States v. Kimbrough*, 477 F.3d 144, 147 (4th Cir. 2007).

### A.

During the evening hours of November 28, 2006, Cain was arrested as part of an undercover drug sting operation by U.S. Drug Enforcement Administration ("DEA") agents. After his arrest, the agents took Cain to the Central Booking facility in Baltimore City to await his initial appearance, where he stayed for the night. Prior to his initial appearance, Cain told the arresting agents that he wanted to cooperate with them, suggesting that he could provide drugs to the agents if they could get him out of jail.[1]

The next day, Cain made an initial appearance with his brother, a co-defendant, before a federal magistrate judge. At this hearing, the magistrate judge advised Cain of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), as well as of the nature of the crimes charged against him. In response, Cain stated that he understood both his right to remain silent and his right to counsel. Thereafter, Cain completed a financial affidavit indicating the need for court-appointed counsel.

Because the Federal Public Defender was already representing his co-defendant, the magistrate judge informed Cain that he would arrange for him to be represented by another attorney pursuant to the CJA. The magistrate judge then ordered Cain's detention pending further proceedings.

Immediately after this initial appearance, Cain again informed the DEA agents that he wanted to speak with them in the hope that he and his brother might be released. According to the Government, because the U.S. Marshals needed to transport Cain back to the jail, the DEA agents were unable to speak with Cain at that time.

---

[1] Cain also moved to suppress these statements, but the district court denied that motion. Because Cain does not appeal this aspect of the district court's decision, it is not before us.

On November 30, the day following his initial appearance, Cain was returned to the courthouse so that he could meet with the DEA agents as he had twice before requested. Two DEA agents and an Assistant U.S. Attorney ("AUSA") were present at the meeting on behalf of the Government. Cain did not have an attorney present with him at the interview. At the time of the interview, the district court had appointed the CJA Panel for the District of Maryland (the "CJA Panel") to represent Cain. Although it is clear from the record that the CJA panel appointed a specific CJA attorney to Cain at some point on the day of the interview, the record does not reveal whether this appointment occurred by the time the interview was conducted. In any event, the Government did not notify the CJA Panel that Cain had indicated his willingness to speak with the DEA agents and an AUSA.[2]

Before the interview began, the DEA agents re-apprised Cain of his *Miranda* rights and told him that he was not required to make any statements without counsel present. Despite these reminders, Cain affirmed his desire to speak with the agents. Cain also signed a written form acknowledging that he understood that the district court was arranging to have an attorney to represent him, that he waived his right to have an attorney present at the interview, and that it was at his request that he was meeting with the Government without an attorney present. After executing the waiver, Cain made numerous statements to the agents implicating himself and others in drug trafficking crimes. During the course of the interview, Cain identified his Mexican cocaine supplier and admitted to having sold cocaine.

B.

On March 7, 2007, a federal grand jury sitting in the District of Maryland returned a seven-count superseding indictment against Cain, which included charges of a conspiracy to distribute five or more kilograms of cocaine, in violation of 21 U.S.C.A. § 846 (West 1999 & Supp. 2007), and possession with intent to distribute cocaine, in violation of 21 U.S.C.A. § 841 (West 1999 & Supp. 2007).

---

[2]At the suppression hearing, the Government acknowledged that if Cain had been represented by an Assistant Public Defender, it would have attempted to contact that lawyer prior to interviewing Cain.

Thereafter, Cain moved to suppress the statements that he made to the DEA agents on November 30, arguing that the Government violated his Sixth Amendment rights by interviewing him without first trying to contact his CJA attorney. The district court held a hearing on the motion on June 1, 2007 and, by written order on June 12, granted Cain's motion to suppress. The district court first concluded that the Government violated Cain's Sixth Amendment rights by interviewing him without first contacting his attorney because Cain had invoked his right to counsel at his initial appearance by requesting a CJA attorney at that time. In the alternative, the district court held that suppression was warranted because the Government's interrogation of Cain violated the district court's implementation of its CJA plan.

The Government timely appealed, and we have jurisdiction pursuant to 18 U.S.C.A. § 3731 (West 2000 & Supp. 2006) (granting the courts of appeals jurisdiction over interlocutory appeals by the United States "from a decision or order of a district court suppressing or excluding evidence").

## II.

In reviewing a district court's ruling on a motion to suppress, we review the court's factual findings for clear error, and its legal conclusions de novo. *United States v. McCoy*, 513 F.3d 405, 410 (4th Cir. 2008).

## A.

The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. A criminal defendant's Sixth Amendment right to counsel attaches at the initiation of adversary judicial proceedings, which at least includes the point of formal charge, indictment, information, preliminary hearing, or arraignment. *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991).[3]

---

[3]The parties do not dispute that Cain's Sixth Amendment right to counsel had both attached and been properly invoked before Cain gave the inculpatory statements at issue.

In *Michigan v. Jackson*, 475 U.S. 625 (1986), the Supreme Court created a bright-line rule for deciding whether an accused who has asserted his Sixth Amendment right to counsel has subsequently waived that right so that the Government's interrogation of him without counsel present does not violate the Constitution. Adopting the reasoning of *Edwards v. Arizona*, 451 U.S. 477 (1981), which had announced an identical prophylactic rule in the Fifth Amendment context, the *Jackson* Court held if a defendant's Sixth Amendment right to counsel has attached and the defendant has invoked that right, law enforcement officers may not interrogate him *unless* the defendant initiates the exchange with the officers and waives his right to counsel. *Jackson*, 475 U.S. at 636. Thus, if the officers initiate contact with the defendant, any waiver of the defendant's Sixth Amendment rights is presumed invalid, and evidence obtained pursuant to such a waiver is subject to suppression. *Id.*

As the Supreme Court recognized in *Michigan v. Harvey*, 494 U.S. 344 (1990), however, *Jackson*'s rule is inapposite when the *defendant* initiates contact with law enforcement. According to the *Harvey* Court, "nothing in the Sixth Amendment prevents a suspect charged with a crime and represented by counsel from voluntarily choosing, on his own to speak with police in the absence of an attorney." *Id.* at 352. Accordingly, the Sixth Amendment proves no bar to an interrogation: (1) if it was the defendant, and not the Government, who initiated the interrogation; and (2) if the defendant voluntarily waived his right to counsel.

Cain does not contest these familiar Sixth Amendment principles. And Cain acknowledges that a DEA agent testified that Cain advised him that he wanted to speak to the agents in the hope that he and his brother could avoid time in jail. But Cain argues that it is unclear from the record whether he offered to speak to the agents on his own accord or whether he merely responded to the agents' suggestion that he could help himself as well as his brother by speaking to the Government sooner rather than later. In light of this purported factual ambiguity, Cain contends that his statements must be suppressed under *Jackson*. We disagree.

The district court found that Cain initiated contact with the Government, a factual finding that is in no way clearly erroneous on the

record presented. Indeed, the record clearly demonstrates that Cain requested to speak with the Government on at least two occasions: (1) on November 29, 2006, prior to his initial appearance; and (2) on November 30, 2006, the day after his initial appearance. Moreover, on November 30, 2006, before his interview with the Government, Cain signed a statement acknowledging that "he requested to speak with the law enforcement agents and the Assistant United States Attorney." (J.A. at 109-11.) The evidence also establishes that Cain was advised of his right not to speak with the Government without an attorney present on at least three different occasions.[4]

Despite its finding that Cain initiated contact with the Government, the district court held that Cain's Sixth Amendment rights had been violated because "upon request for court-appointed counsel by Defendant Cain, any subsequent interview without seeking the presence of that counsel is violative of his Sixth Amendment rights." (J.A. at 115.) We can find no basis for this purported constitutional holding in the Supreme Court's or our precedents. To the contrary, the district court's conclusion runs afoul of the well-settled rule that where a defendant initiates contact with law enforcement officers, he may validly waive his Sixth Amendment rights, and submit to Government interrogation, even if he is represented by an attorney. *Harvey*, 494 U.S. at 352. As the Supreme Court explained in *Patterson v. Illinois*:

> Preserving the integrity of the accused's choice to communicate with police only through counsel is the essence of *Edwards* and its progeny — not barring an accused from making an initial election as to whether he will face the State's officers during questioning with the aid of counsel, or go it alone. *If an accused knowingly and intelligently pursues the latter course, we see no reason why the uncounseled statements he makes must be excluded at his trial.*

---

[4]These occasions include: (1) by the magistrate judge at the initial appearance; (2) by the DEA agents, who repeatedly informed Cain that he did not have to speak with them and then formally read Cain his *Miranda* rights; and (3) in the written waiver form that was signed by Cain before his interview, which not only advised him of his right to counsel, but also informed him that the district court was obtaining an attorney for him.

487 U.S. 285, 291 (1998) (emphasis added and omitted) (internal quotation marks omitted).[5]

*Patterson*'s rationale directly applies here. It is clear that Cain desired to speak to the DEA agents both before and after his initial appearance, as evidenced by his multiple requests for a meeting with them and by his execution of the waiver form provided by the agents. As much as the Sixth Amendment prevents the Government from initiating contact with and interrogating a defendant who has invoked his right to counsel, it permits a defendant to initiate contact with and give statements to the Government on his own accord. *See e.g.*, *Murphy v. Holland*, 845 F.2d 83, 85 (4th Cir. 1988) (holding that the admission of certain inculpatory statements of the defendant did not violate his Sixth Amendment rights, even though he had been arraigned and requested counsel, because the defendant initiated the conversation with law enforcement and properly waived his Sixth Amendment rights); *United States v. Garlewicz*, 493 F.3d 933, 937 (8th Cir. 2007) (same).

In summary, we think it is clear that Cain initiated the November 30 interview with law enforcement officials during which he made the inculpatory statements he now argues should be suppressed. As such, his Sixth Amendment rights were not violated.

B.

Having determined that Cain's Sixth Amendment rights were not violated, we turn to consider the district court's alternative holding that even if no constitutional violation occurred, suppression of the statements was warranted nonetheless. Acting pursuant to its supervisory authority, the district court also suppressed Cain's statements on the ground that the Government violated the court's implementation

---

[5]On appeal, Cain does not argue that he did not knowingly and intelligently waive his right to counsel. The Criminal Justice Act Panel for the District of Maryland, acting as amicus curiae, however, argues that Cain's waiver of his Sixth Amendment right to counsel was not knowing and intelligent because Cain did not have an opportunity to exercise that right. This argument is without merit.

of the district court's CJA Plan by interviewing Cain without first contacting the CJA Panel.

A federal court's inherent or supervisory power permits it "to supervise the administration of criminal justice among the parties before the bar" and to "exclude evidence taken from the *defendant* by willful disobedience of law." *United States v. Payner*, 447 U.S. 727, 735, n.7 (1980) (internal quotation marks omitted, emphasis in original). The "inherent power to refuse to receive material evidence[, however,] is a power that must be *sparingly* exercised." *Lopez v. United States*, 373 U.S. 427, 440 (1963) (emphasis added). Accordingly, we review the district court's use of the exclusionary rule to remedy statutory violations for abuse of discretion. *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999).

To protect the Sixth Amendment's guarantee of the right to counsel in criminal prosecutions, Congress passed the CJA in 1964, which ensures that "defendants who are financially unable to afford trial services necessary to an adequate defense are provided them in accordance with the Sixth Amendment." *United States v. Barcelon*, 833 F.2d 894, 896 (10th Cir. 1987); *see also Heath v. U.S. Parole Comm'n,* 788 F.2d 85, 88 (2d Cir. 1986) (same). Pursuant to the CJA, the District of Maryland established its CJA Plan to facilitate the appointment of counsel for financially-eligible defendants. In accordance with the CJA's charge that a "person for whom counsel is appointed shall be represented at every stage of the proceeding from his initial appearance before the United States magistrate judge or the court through appeal," 18 U.S.C.A. § 3006A(c), the district's CJA Plan provides that counsel "shall be provided to eligible persons as soon as feasible." (J.A. at 123.)

Relying on these provisions, the district court concluded that Cain's statements should be suppressed because the Government violated the district court's implementation of the Plan by interviewing Cain without first contacting the CJA Panel. This conclusion seems to amount to a holding that the Government's actions here violated the spirit of the CJA and the district's implementing Plan.[6] We

---

[6]The parties have not cited and we are not aware of any case ordering suppression of evidence for a violation of 18 U.S.C.A. § 3006A.

believe the district court abused its discretion in reaching this conclusion.

To be sure, the CJA establishes the broad institutional framework for appointment of counsel for indigent criminal defendants, thereby ensuring that the Sixth Amendment right to counsel is safeguarded. But the CJA in no way circumscribes a defendant's ability to voluntarily initiate contact with law enforcement officers and speak with them about the charges that he faces. Moreover, the Government is not obligated, by the Constitution or the CJA, to stall a defendant eager to confess or speak with law enforcement officers until his attorney arrives. The CJA and the district's CJA Plan simply do not limit the types of investigative steps that the Government may take after counsel is appointed. Here, Cain freely spoke to the DEA agents and AUSA after twice requesting a meeting with the Government and signing a waiver of his Sixth Amendment rights. In the face of Cain's clear willingness to speak to the law enforcement agents, it was not incumbent on the Government to sit on its hands simply because the machinery of the CJA-appointment process had already been set in motion. Accordingly, we hold that the district court abused its discretion in suppressing Cain's statements pursuant to its supervisory powers.[7]

## III.

For the foregoing reasons, we reverse the district court's order

---

[7]Amicus Curiae also contends that the Government's interrogation policy for CJA defendants violates the Equal Protection guarantees of the Fifth Amendment's Due Process Clause because it treats CJA defendants differently with respect to a fundamental constitutional right based on their poverty. This contention is based on the CJA Panel's assertion that if a defendant is represented by retained counsel or the Office of the Federal Public Defender, the Government notifies counsel before meeting with the defendant, but if a defendant is represented by the CJA Panel and the defendant initiates an interview before the CJA Panel has designated a specific attorney, the Government does not contact the CJA Panel to learn if a CJA Panel attorney has been designated, or to expedite that designation. Like Amicus Curiae's alternate argument, *see supra* note 5, this argument is likewise without merit.

granting Cain's motion to suppress his November 30, 2006 statements and remand for proceedings consistent with this opinion.

*REVERSED AND REMANDED*