PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 12-4442

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

NAWAF M. HASAN,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria.  T. S. Ellis, III, Senior
District Judge.  (1:11-cr-00503-TSE-1)

Argued:  March 28, 2013                Decided:  June 6, 2013

Before GREGORY, DUNCAN, and AGEE, Circuit Judges.

Affirmed by published opinion.  Judge Agee wrote the opinion, in
which Judge Gregory and Judge Duncan joined.

**ARGUED:** Marvin David Miller, Alexandria, Virginia, for
Appellant.  Richard Daniel Cooke, OFFICE OF THE UNITED STATES
ATTORNEY, Richmond, Virginia, for Appellee.  **ON BRIEF:** Neil H.
MacBride, United States Attorney, Rebeca H. Bellows, Assistant
United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY,
Alexandria, Virginia, for Appellee.

AGEE, Circuit Judge:

Nawaf Hasan was convicted of various offenses related to the trafficking of contraband cigarettes. Hasan challenges his convictions on the basis that the conduct of the government agents investigating this case was so outrageous as to violate his due process rights. Separately, Hasan argues that the district court applied the wrong statutory rule to calculate the amount of the civil forfeiture adjudicated against him. For the reasons explained herein, we reject both challenges and affirm the judgment of the district court in its entirety.

I.

Significant state-by-state disparities in the amount of taxes levied against the sale of a pack of cigarettes has created an interstate black market in the trafficking and distribution of cigarettes. Typically, cigarettes are purchased in a state with low taxes and then subsequently sold in another state where such taxes are much higher, but without the payment of the higher levy at point of sale. In this way, contraband cigarette traffickers seek to evade applicable state and local taxes on cigarettes while profiting from the tax disparity.

In response to this potential for state tax evasion, Congress enacted a statutory scheme to ensure that cigarettes are taxed at the applicable rate in the locality in which sold

to the consumer. One part of the statutory framework is the Contraband Cigarette Trafficking Act ("CCTA"), 18 U.S.C. § 2341, et seq., which prohibits the trafficking of tobacco products to avoid payment of state taxes. Pursuant to 18 U.S.C. § 2342(a), "[i]t shall be unlawful for any person knowingly to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes or contraband smokeless tobacco." "Contraband cigarettes" are defined as

> a quantity in excess of 10,000 cigarettes, which bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where such cigarettes are found, if the State or local government requires a stamp, impression, or other indication to be placed on packages or other containers of cigarettes to evidence payment of cigarette taxes[.]

18 U.S.C. § 2341(2).[1] Exempted from this definition, however, are cigarettes in the possession of, inter alia, "an officer, employee, or other agent of the United States . . . having possession of such cigarettes in connection with the performance of official duties." Id. § 2341(2)(D).

In 2008, agents with the Federal Bureau of Alcohol, Tobacco, and Firearms ("ATF") began an investigation, in conjunction with other state and federal authorities, into a ring of alleged traffickers of contraband cigarettes. For more

---

[1] Each carton of cigarettes contains 200 cigarettes. 10,000 cigarettes is fifty cartons of cigarettes.

3

than two years, ATF agents and other law enforcement officers participated in undercover transactions involving the sale of untaxed and unstamped cigarettes to members of the conspiracy, including Hasan.[2] The government alleges that between June 2009 and April 2011, undercover agents sold nearly 40,000 cartons of untaxed or unstamped cigarettes to Hasan and other members of the conspiracy. Most of these contraband cigarettes were purchased from ATF agents in Virginia before being transported to New York for sale.[3]

In 2011, Hasan was indicted in the United States District Court for the Eastern District of Virginia on six counts: one count of conspiracy to purchase, possess, transport, and distribute contraband cigarettes, in violation of 18 U.S.C. § 371 (Count 1), and five substantive counts of purchasing,

---

[2] The CCTA defines "contraband cigarettes" as those which do not bear evidence of payment of state taxes (i.e., a stamp), where such evidence is required. Thus, while there is a technical difference between "untaxed" and "unstamped" cigarettes, the terms are largely used interchangeably. There is no allegation that any of the cigarettes purchased and resold by Hasan in this case were properly taxed, but merely unstamped. Consequently, we treat "untaxed" and "unstamped" cigarettes as interchangeable terms for purposes of this opinion.

[3] As the district court observed, New York imposed (as of August 2011) a relatively high, $4.35 per pack tax rate on cigarettes. Virginia, on the other hand, imposed a tax of only $.30 per pack during the same period. Charging prices comparable to properly taxed cigarettes, therefore, a criminal enterprise trafficking cigarettes from Virginia to New York could potentially make up to $4.05 per pack in profit.

4

possessing, and transporting contraband cigarettes, in violation of 18 U.S.C. § 2342(a) (Counts 2-6).

Prior to trial, Hasan filed a motion to dismiss the indictment, or in the alternative, to exclude the evidence collected against him on the basis that the undercover sales of untaxed cigarettes by ATF agents constituted government conduct so outrageous as to violate his due process rights. The district court denied the motions. Hasan and the government then made certain factual stipulations and agreed to proceed to a bench trial while preserving his due process challenge. The court found that the stipulations were sufficient to prove beyond a reasonable doubt that Hasan was guilty of the offenses charged in the indictment, and issued a written opinion explaining its decision to deny the motions to dismiss or suppress.

The court explained that the ATF had congressional authorization to possess and distribute untaxed cigarettes in furtherance of the ATF's law enforcement mission. The court also saw no merit in Hasan's argument that the undercover operation was "outrageous" because the ATF "let the cigarettes walk," and allowed those items to be distributed on the black market rather than confiscating them. The court reasoned that the government's failure to recover the contraband does not render an undercover operation unlawful because often, in order

5

to gather more evidence, law enforcement is required to delay intervention in unlawful activity. The court observed an "important distinction" between cases involving undercover distribution of illegal narcotics and distribution of contraband cigarettes, "which, apart from being untaxed and/or unstamped, are otherwise legal commodities." (J.A. 165.)

The government then filed a motion for a preliminary order of forfeiture in the amount of $604,220, which represented the gross proceeds Hasan realized through the contraband trafficking offenses charged in the indictment. The government represented that its proposed forfeiture order was supported by the plain language of 18 U.S.C. § 981(a)(2)(A), which provides:

> In cases involving illegal goods, illegal services, unlawful activities, and telemarketing and health care fraud schemes, the term "proceeds" means property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense.

Hasan objected to the proposed forfeiture order and argued that the forfeiture amount should only be $130,000—the profits he realized from the cigarette smuggling scheme. He relied upon 18 U.S.C. § 981(A)(2)(B), which provides that "[i]n cases involving lawful goods or lawful services that are sold or provided in an illegal manner, the term "proceeds" means the amount of money acquired through the illegal transactions resulting in the

6

forfeiture, less the direct costs incurred in providing the goods or services." Hasan claimed that the contraband cigarettes were merely lawful goods sold or provided in an illegal manner, thus entitling him to the benefit of the lower forfeiture amount.

The district court overruled Hasan's objection and concluded that "[t]his is a case involving illegal goods, illegal services, unlawful activities. Undercover sales of cigarettes were, as soon as they were . . . taken to New York, contraband." (J.A. 223.) The court adjudicated Hasan as guilty of the charges against him, adopted the government's proposed forfeiture order, and imposed a twenty-four month sentence of incarceration. Hasan has timely appealed and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

Hasan raises two assignments of error on appeal. He first argues that the district court erred in denying his motion to dismiss the indictment or suppress the evidence against him based on the conduct of the government agents investigating this case. Hasan's second claim of error is that the court miscalculated the amount of forfeiture imposed in the civil forfeiture order. We address each issue in turn.

7

A.

Hasan first contends that the district court erred in denying his motion to suppress the evidence against him on the basis that his due process rights were violated. The facts of this case are uncontested, and we review the legal issues underlying the denial of a motion to suppress de novo. See United States v. Cain, 524 F.3d 477, 481 (4th Cir. 2008).[4]

Hasan is essentially raising a generalized due process claim that the law enforcement conduct at issue here was either unlawful or so outrageous as to violate fundamental notions of fairness. He seeks to invoke what the district court aptly described as a "seldom-addressed category of constitutional violations," J.A. 158, first articulated in United States v. Russell, 411 U.S. 423 (1973). In Russell, a criminal defendant argued outrageous government conduct where an undercover agent supplied narcotics manufacturers with a legal, but difficult to obtain, chemical that was essential to the methamphetamine manufacturing process. Id. at 431. After flatly rejecting the

---

[4] In its response brief on appeal, the government suggests that this is an appeal of the denial of a motion to dismiss the indictment. The difference, for purposes of our standard of review, is not a material one. The parties do not dispute any material facts, and under either paradigm our review of the legal issues involved would be de novo. Compare, Cain, 524 F.3d at 481 (reviewing denial of motion to suppress de novo), with United States v. Hatcher, 560 F.3d 222, 224 (4th Cir. 2009) (reviewing denial of motion to dismiss indictment de novo).

8

defendant's claim to an entrapment defense, the Supreme Court also denied a due process claim and observed that

> [w]hile we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction, . . . the instant case is distinctly not of that breed.

Id. at 431-32 (internal citation omitted).

A plurality of the Supreme Court expounded upon (and greatly limited) the application of an "outrageous conduct" due process violation in Hampton v. United States, 425 U.S. 484 (1976). In Hampton, a government informant allegedly sold heroin to the defendant, who later sold it to government agents. Although the Court acknowledged that "the Government . . . played a more significant role in enabling petitioner to sell contraband in this case than it did in Russell," id. at 489, the Court nevertheless rejected the defendant's claim that his due process rights were violated, id. at 490.

> To sustain petitioner's contention here would run directly contrary to our statement in Russell that the defense of entrapment is not intended to give the federal judiciary a 'chancellor's foot' veto over law enforcement practices of which it did not approve. . . .
>
> The limitations of the Due Process Clause of the Fifth Amendment come into play only when the Government activity in question violates some protected right of the defendant. Here, as we have noted, the police, the Government informant, and the defendant acted in concert with one another. If the result of the governmental activity is to implant in

9

the mind of an innocent person the disposition to commit the alleged offense and induce its commission, the defendant is protected by the defense of entrapment. If the police engage in illegal activity in concert with a defendant beyond the scope of their duties the remedy lies, not in freeing the equally culpable defendant, but in prosecuting the police under the applicable provisions of state or federal law.

Id. at 490 (internal citation and quotation marks omitted).[5]

After Hampton, the "outrageous conduct" doctrine survives in theory, but is highly circumscribed. As we explained in United States v. Goodwin, 854 F.2d 33 (4th Cir. 1988), a due process violation may only be found when the conduct at issue "is outrageous, not merely offensive." Id. at 37. And as the district court observed, this Court has never held in a specific case that the government has violated the defendant's due process rights through outrageous conduct. In United States v. Osborne, 935 F.2d 32 (4th Cir. 1991), this Court opined on the "high shock threshold" of the appellate courts in the context of

---

[5] Justice Powell wrote a concurring opinion in Hampton, expressing doubts as to the plurality's conclusion that the entrapment defense is the only remedy available to an accused defendant who claims he was the victim of fundamentally unfair government conduct: "[t]here is certainly a [constitutional] limit to allowing governmental involvement in crime. It would be unthinkable, for example, to permit government agents to instigate robberies and beatings merely to gather evidence to convict other members of a gang of hoodlums." Hampton, 425 U.S. at 493 n.4 (Powell, J., concurring) (quoting United States v. Archer, 486 F.2d 670, 676-77 (2d Cir. 1973)) (alterations in Hampton).

10

the "outrageous conduct" due process violation, and the Court's reluctance to vacate a conviction based on outrageous government conduct that does not otherwise violate a defendant's rights. Id. at 36. The Osborne court cited with approval several cases, including United States v. Simpson, 813 F.2d 1462 (9th Cir. 1987), wherein the Ninth Circuit upheld the conviction of a defendant who had provided heroin in exchange for sexual favors from a woman who had been manipulated into doing so by the FBI. 935 F.2d at 36. Thus, the Osborne court articulated what has become the test in this circuit for whether government conduct is so outrageous as to offend due process: the conduct must be "shocking," or "offensive to traditional notions of fundamental fairness." 935 F.2d at 37. In refining the standard for an "outrageous conduct" due process claim, however, the court again concluded that the government conduct at issue failed to satisfy that threshold. With these general standards in mind, we turn now to Hasan's specific arguments.

Hasan first contends that the district court erred in concluding that Congress authorized the ATF to undertake the investigation that lead to his apprehension. He implies that the multiple sales of cigarettes to him by the ATF, anticipating the cigarettes would later be resold without payment of state taxes are outrageous acts, per se, because the ATF effectively distributed "contraband cigarettes." We disagree.

11

As noted earlier, the CCTA specifically exempts from the definition of "contraband cigarettes" unstamped cigarettes that are in the possession of an "officer, employee, or other agent of the United States . . . having possession of such cigarettes in connection with the performance of official duties." See 18 U.S.C. § 2341(2)(D). Hasan acknowledges that ATF agents may possess untaxed cigarettes, but argues that by failing to grant explicit authorization for government agents to also distribute untaxed cigarettes, Congress has impliedly prohibited the practice.

Hasan's argument, however, is based on a misreading of the exemption language of the CCTA. The CCTA does not, as such, "authorize" federal agents to possess contraband cigarettes. Rather, under the plain language of the statute, when unstamped cigarettes are in the possession of federal agents (in the course of their official duties) the cigarettes are not "contraband" as a matter of law. This distinction is a significant one. Since the untaxed cigarettes are not contraband in the possession of federal agents, the subsequent distribution through undercover sales to cigarette traffickers is not a distribution of contraband cigarettes by the agents. The untaxed cigarettes only become contraband when they are then possessed by someone, like Hasan, not exempted from the

12

statutory definition. See § 2341(2).[6] The ATF-distributed cigarettes were not "contraband cigarettes" under the clear terms of the statute.

Moreover, Congress has explicitly authorized federal law enforcement to conduct commercial endeavors in the context of undercover investigations, and to use the proceeds from these transactions to offset the costs of the undercover operation. See Departments of State, Justice, and Commerce, the Judiciary and Related Agencies Appropriations Act of 1992, Pub. L. No. 102-395, § 102(b)(1)(B), (D) (authorizing the Federal Bureau of Investigation and Drug Enforcement Administration to use appropriated funds to establish, inter alia, "business entities as part of an undercover investigative operation," and authorizing "proceeds from such undercover operation [to] be used to offset necessary and reasonable expenses incurred in such operation"). This statutory authorization has also been specifically extended to the ATF. See Consolidated and Further Continuing Appropriations Act of 2012, Pub. L. No. 112-55 § 207

---

[6] Hasan further undermines his own argument by explicitly conceding that the ATF is authorized to purchase contraband cigarettes from cigarette traffickers. See Appellant's Opening Br. at 8 ("[ATF] may only possess, such as when an undercover agent buys from dealers."). Thus, under Hasan's theory, if "possession" can be read to include "purchase" or "receipt," there is no logical reason that term would not also be read to include "distribution."

13

("Public Law 102-395 section 102(b) shall extend to the [ATF] in the conduct of undercover investigative operations[.]").

With this statutory foundation, it simply cannot be said that the actions undertaken by the ATF in this case were unlawful.

There is also no merit to Hasan's claim that ATF agents in this case otherwise engaged in behavior that is "offensive to traditional notions of fundamental fairness." Osborne, 935 F.2d at 37. As we observed in Goodwin, "[o]utrageous is not a label properly applied to conduct because it is a sting or reverse sting operation involving contraband." 854 F.2d at 37. We further reasoned in United States v. Milam, 817 F.2d 1113, 1116 (4th Cir. 1987), that "Justice Powell's concurrence in Hampton recognized that the practicalities of law enforcement sometimes compel officers to provide supplies to drug manufacturing operations, or even to supply 'contraband itself,' and suggested that due process does not necessarily prohibit use of these and similar investigative techniques." Thus, the mere fact that ATF sold untaxed cigarettes does not render their investigation outrageous.

In sum, we see no merit to Hasan's argument that the conduct of ATF agents in this case was unlawful, or otherwise

"shocking," or "offensive to traditional notions of fundamental fairness." We therefore affirm his conviction.[7]

## B.

Hasan also contends on appeal that the district court miscalculated the forfeiture amount by calculating the sum based on the gross proceeds, rather than profits, realized by the contraband cigarette distribution scheme. We find that his claim lacks merit and the district court did not err.

This Court reviews the district court's interpretation of statutory provisions de novo, Scott v. United States, 328 F.3d 132, 137 (4th Cir. 2003), but will reverse its findings of fact only if we find them clearly erroneous. See, e.g., HSBC Bank USA v. F & M Bank N. Va., 246 F.3d 335, 338 (4th Cir. 2001); see also United States v. Funds Held in the Name or for the Benefit of Wetterer, 210 F.3d 96, 106 (2d Cir. 2000) (reviewing legal determination de novo and factual findings for clear error in applying civil forfeiture statute).

Pursuant to 18 U.S.C. § 981(a), a defendant's property is subject to forfeiture if, inter alia, it is "derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity[.]'" See id. § 981(a)(1)(C). Section

---

[7] Hasan does not raise a separate challenge to the term of imprisonment imposed against him.

15

981(a)(1)(C) defines "specified unlawful activity" in part by cross-reference to 18 U.S.C. § 1956(c)(7)(A), which in turn cross-references 18 U.S.C. § 1961(1). That subsection encompasses offenses related to trafficking in contraband cigarettes. Thus, the "proceeds" of the cigarette trafficking are clearly subject to forfeiture. However, the definition of what constitutes "proceeds" differs depending on the nature of the offense. See id. § 981(a)(2) ("For purposes of paragraph (1), the term 'proceeds' is defined as follows" and then providing different categories).

The district court applied § 981(a)(2)(A), which provides:

> In cases involving illegal goods, illegal services, unlawful activities, and telemarketing and health care fraud schemes, the term "proceeds" means property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense.

Hasan contends using subsection A was error and the district court should have instead applied subsection B, which states

> In cases involving lawful goods or lawful services that are sold or provided in an illegal manner, the term "proceeds" means the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services. The claimant shall have the burden of proof with respect to the issue of direct costs. The direct costs shall not include any part of the overhead expenses of the entity providing the goods or services, or any part of the income taxes paid by the entity.

16

Id. § 981(a)(2)(B).  In support, Hasan argues that contraband cigarettes are merely lawful goods that are sold or provided in an illegal manner and cites the district court's order denying his motion to dismiss or suppr0ess, in which the court concluded that "contraband cigarettes, which, apart from being untaxed and/or unstamped, are otherwise legal commodities." (J.A. 165.)

We must determine, therefore, whether "contraband cigarettes" are "illegal goods" (§ 981(a)(2)(A)) or "lawful goods . . . that are sold or provided in an illegal manner" (§ 981(a)(2)(B)).  We have identified no published opinion from a court of appeals that has addressed this specific question. The sole unpublished court of appeals decision, as well as the district court decisions to have confronted the issue, are in agreement, however, that distribution of contraband cigarettes is a "case involving illegal goods" thus triggering § 981(a)(2)(A).  United States v. Noorani, 188 F. App'x 833, 838 (11th Cir. 2006) (per curiam) ("[W]e conclude that the district court did not err in calculating the order of forfeiture based upon the wholesale value of the cigarettes because the statute authorized that amount."); United States v. Funds from First Reg'l Bank Acct. No. XXXXX1859, 639 F. Supp. 2d 1203, 1216 (W.D. Wash. 2009) ("Global's conduct in selling and transporting contraband cigarettes in violation of the CCTA therefore falls into the category of 'cases involving . . . unlawful activities'

17

in which gross receipts are subject to forfeiture as 'proceeds.'
. . . This case also involves the sale and transport of
'illegal goods' because the cigarettes or 'goods' that Global
sold and transported to Washington were unlawful under state
law."); United States v. Patel, No. 05:11cr031, 2013 WL 149672,
at *7 (W.D. Va. Jan. 11, 2013) (unpublished) ("[B]ecause the
possession and trafficking of contraband cigarettes is
inherently illegal, they are illegal goods for the purposes of
§ 981(a)(2), requiring forfeiture of gross proceeds[.]"); United
States v. Diallo, No. 09 CR 858 (MEA), 2011 WL 135005, at *2
(S.D.N.Y. Jan. 13, 2011) (unpublished) (citing § 981(a)(2)(A)).

In conducting our independent analysis into the
categorization of "contraband cigarettes," for forfeiture
purposes, we look primarily to the statutory definition of that
term. As explained supra, the CCTA defines "contraband
cigarettes" as "a quantity in excess of 10,000 cigarettes, which
bear no evidence of payment of the applicable State or local
cigarette taxes in the State or locality where such cigarettes
are found[.]" 18 U.S.C. § 2341(2). By its plain terms, the
statute does not define contraband cigarettes by reference to
the manner in which the cigarettes are sold. Rather, when the
cigarettes are possessed without evidence of payment of taxes,

18

they are contraband per se.[8] In other words, contraband cigarettes are inherently unlawful, i.e., "unlawful goods." Contraband cigarettes could never be sold lawfully because it is possession of the defined item itself that violates the CCTA.

By contrast, courts have found § 981(a)(2)(B) applies when a good or service that is not inherently illegal is sold or provided in an illegal manner. See, e.g., United States v. Mahaffy, 693 F.3d 113, 138 (2d Cir. 2012) (holding that securities fraud constituted lawful goods sold in an illegal manner because, while "trading . . . securities, as a general manner, is not unlawful. . . . [A]ny illegality occurred when the defendants bought and sold securities as part of a scheme involving illegal bribery and frontrunning."); United States v. St. Pierre, 809 F. Supp. 2d 538, 543 (E.D. La. 2011) (applying § 981(a)(2)(B) to calculate forfeiture of a contractor convicted of bribery and fraud because "[i]nformation technology work is a lawful service and crime cameras are lawful goods, but the contracts for that work or those cameras were obtained through illegal bribes and kickbacks. Thus the amounts of money

---

[8] As explained earlier, the ATF's possession and distribution of cigarettes in the course of its duties is expressly exempt from the statutory definition of contraband cigarettes.

19

acquired through those contracts were for otherwise legal goods and services provided 'in an illegal manner.'").[9]

Hasan also invokes the law of the case doctrine by arguing that the district court should have been bound by the statement it made in denying his motion to dismiss, that "apart from being untaxed and/or unstamped, [contraband cigarettes] are otherwise legal commodities."   (J.A.  165).   He argues that this constitutes, in effect, a concession by the court that contraband cigarettes are lawful goods sold in an illegal way.

Once again, however, Hasan fails to recognize that contraband cigarettes, as defined by statute, are inherently unlawful goods.  The district court's statement, that cigarettes are otherwise lawful (i.e., when they are properly taxed) is correct, but the cigarettes to which the court referred were not contraband cigarettes.

---

[9] Because we conclude that contraband cigarettes are illegal goods, we do not decide whether the distribution of contraband cigarettes is an "unlawful activity" within the meaning of § 981(a)(2)(A).   To be sure, distribution of contraband cigarettes is against the law, but at least one court has recognized that "unlawful activity," as the term is used in § 981(a)(2)(A), is a term of art that is not meant to encompass every activity that is unlawful.  See United States v. Nacchio, 573 F.3d 1062, 1089 (10th Cir. 2009) ("The term 'unlawful activities' in section 981(a)(2)(A) was meant to cover inherently unlawful activities such as robbery that are not captured by the words 'illegal goods' and 'illegal services.") (quoting 1 David Smith, Prosecution and Defense of Forfeiture Cases, ¶ 5.03[2], at 5-62 (2008)).

We therefore conclude that the district court properly calculated the order of forfeiture in this case.[10]

### III.

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED

---

[10] Hasan's sole challenge to the forfeiture order is the legal one discussed above. He does not otherwise claim an error in the amount of proceeds attributed to him for forfeiture purposes.