JANE B. STRANCH, Circuit Judge, concurring. I write separately to express my discomfort with the governmental operation known as a “stash house sting.” The sting that targeted these Defendants is one in a long list of nearly-identical operations conducted by the ATF across the country. Brad Heath, ATF Uses Fake Drugs, Big Bucks to Snare Suspects, USA Today (June 28, 2013, 11:26 AM), https://www. usatoday.com/story/news/nation/2013/06/27/ atRstash-houses-sting-usa-today-investigation/2457109/ (noting that more than 600 individuals have been prosecuted following similar “stash house stings”). Because these stings are wholly inventions of law enforcement agents, they can and do include powerful inducements to participate in one big “hit,” a hit that is conveniently large enough to qualify for mandatory minimum sentences. Obtaining the outsized reward is also made to look easy — the agent is a disgruntled insider who knows when and how to stage these “rip-and-runs” and offers to provide all needed assistance, from manpower to transportation. The unseemly nature of the Government’s activity is emphasized by its failure to achieve its declared goals of jailing dangerous criminals and making our streets safer. Evidence showing that these hurry-up set-ups achieve the stated goals was not proffered and the facts here demonstrate why: no known dangerous individuals or criminal enterprises were researched or targeted and no pre-existing drug rings or conspiracies were broken up. In fact, this sting trapped Flowers, a gainfully employed young man with no criminal record. We have this result because informants were simply sent out into the community to gather information and find someone who would bite at the opportunity to make loads of money quickly. And, in line with sting statistics, the men recruited here were all African American and all from impoverished areas — as are the overwhelming number of stash-house-sting targets across the nation. This concerning ATF tactic has rightly drawn criticism in news reporting, scholarly writing, and from the judiciary. An investigative report from USA Today explored the risks and high costs associated with the stings, and the assurance that defendants involved would receive lengthy sentences. Heath, supra (“USA TODAY reviewed thousands of pages of court records and agency files, plus hours of undercover recordings. Those records — many of which had never been made public — tell the story of how an ATF strategy meant to target armed and violent criminals has regularly used risky and expensive undercover stings to ensnare low-level crooks who jump at the bait of a criminal windfall”) Scholarly writing has also criticized the stings, noting that the government does not have to “target existing criminal enterprises or have prior suspicion of potential targets,” that it has “full control over the amount of time its targets spend in prison because it can specify the amount of drugs involved in the fictional conspiracies,” and that the tactic has a disproportionate effect on poor minority defendants. See Marc D. Esterow, Note, Lead Us Not into Temptation: Stash House Stings and the Outrageous Government Conduct Defense, 8 Drexel L. Rev. 1, 28-31 (2016); United States v. Kindle, 698 F.3d 401, 414 (7th Cir. 2012) (Posner., J, concurring and dissenting) (citing Katherine Tinto, Undercover Policing, Overstated Culpability, 34 Cardozo L. Rev. 1401 (2013)) (referring to these stings as a “disreputable tactic” and noting that “[l]aw enforcement uses them to increase the amount of drugs that can be attributed to the persons stung, so as to jack up their sentences”). The effect on poor minority communities is the subject of litigation in the United States District Court for the Northern District of Illinois, where a recently filed expert report concludes that there was a clear pattern of racial disparities in Illinois sting cases, and finds that the disparities are inexplicable on grounds other than race. Report of Jeffrey Fagan, Ph.D., l:12-er-00632, R. 510-2. A motion to dismiss based on racially selective law enforcement is currently pending in that court. R. 518. Despite increasing awareness of the problems and inequities inherent in fictitious stash house stings, at issue here is whether an appropriate legal path exists for a defendant to successfully challenge the stings. A majority of circuits have recognized the outrageous government defense, but impose such a high burden on defendants that the defense rarely results in dismissal of charges. See United States v. Guzman, 282 F.3d 56, 59 (1st Cir. 2002); United States v. Al Kassar, 660 F.3d 108, 121 (2d Cir. 2011); United States v. Twigg, 588 F.2d 373, 377 (3d Cir. 1978); United States v. Hasan, 718 F.3d 338, 343 (4th Cir. 2013); United States v. Gutierrez, 343 F.3d 415, 421 (5th Cir. 2003); United States v. Boone, 437 F.3d 829, 841 (8th Cir. 2006); United States v. Black, 733 F.3d 294, 303-04 (9th Cir. 2013); United States v. Dyke, 718 F.3d 1282, 1287 (10th Cir. 2013); United States v. Augustin, 661 F.3d 1105, 1122-23 (11th Cir. 2011); United States v. Hsia, 81 F.Supp.2d 7, 19 (D.D.C. 2000). In United States v. Black, the Ninth Circuit examined a stash house sting and, despite reservations, affirmed the district court’s determination that the operation did not constitute outrageous government conduct because the defense is “limited to extreme cases” where the government’s conduct is “so grossly shocking and so outrageous as to violate the universal sense of justice.” 733 F.3d at 298, 302. There, the same ATF agent, Richard Za-yas, orchestrated a sting, telling a familiar story: he was a disgruntled drug courier who suggested robbing a cocaine stash house guarded by two men, at least one of whom would be armed. Id. at 298-301. The day of the proposed robbery, the defendants arrived at the agreed upon location and were arrested, then convicted of conspiracy to possess cocaine with intent to distribute and use of a firearm in furtherance of a drug trafficking offense. Id. at 297-98. Despite affirming, the court was troubled: The crimes of conviction ... resulted • from an operation created and staged by ATF. Most of the hard evidence against the defendants consisted of words used at meetings Zayas set up.... Zayas invented the scenario, including the need for weapons and for a crew, and the amount of cocaine involved. The only overt actions by the defendants involved showing up at meetings, including arriving at the parking lot with four hidden, loaded weapons and then driving to the storage warehouse where they were arrested. Although those actions clearly corroborate the defendants’ intent to carry out an armed robbery, defendants were responding to the government’s script. Id. at 302-03. The court was also concerned with how the government recruited the defendants. The ATF was not “infiltrating a suspected crew of home invasion robbers, or seducing persons known to have actually engaged in such criminal behavior.” Id. at 303. Rather, the ATF found the defendant by “trolling for targets,” sending the informant to “cast his bait in places defined only by economic and social conditions.” Id. Also as here, the court recognized that agents can guarantee long sentences for defendants: , In fictional stash house operations like the one at issue here, the government has virtually unfettered ability to inflate the amount of drugs supposedly in the house and thereby obtain a greater sentence for the defendant.... The ease with which the government can manipulate these factors makes us wary of such operations in general.... Id. at 303 (citing United States v. Briggs, 623 F.3d 724, 729-30 (9th Cir. 2010)); see also Heath, supra. I find the concept of these “stash house sting” operations at odds with the pride we take in presenting American criminal justice as a system that treats defendants fairly and equally under the law. I am heartened that judges increasingly are objecting to these sting operations and prosecutors are responding. See, e.g. United States v. McLean, 199 F.Supp.3d 926 (E.D. Penn. 2016); Michael Tarm, Federal prosecutors drop dozens of stash house sting charges) AP (Jan. 30, 2016), available at http://www.msn.com/en-us/news/crime/ federal-prosecutors-drop-dozens-of-stash-house-sting-charges/ar-AA8Lxuy. As noted, multiple disciplines have proposed methods to address the injustices that appear to be an integral part of stash house sting operations, particularly those relating to sentences.[1] Yet it seems we remain without an established vehicle in the law to define a dividing line between law enforcement practices that are honorable and those that are not. In the interim, these questionable schemes continue to use significant government resources and to adversely impact the poor, minorities, and those attempting to re-integrate into society. And they apparently do so with no increase in public safety and no deterrence of or adverse effect on real stash houses. These costly and concerning sting operations do not accord with the principles of our criminal justice system and I hope they will be discontinued. . See, e.g., Sensenbrenner-Scott SAFE Justice Reinvestment Act, H.R. 2944 (114th Cong., 1st Sess. (2015)) (would permit a sentencing court to disregard the quantity and type of drug that was determined by an agent soliciting the defendant to participate in a stash-house robbery).