**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-4704

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

TRAQUAN MALIK HENDERSON,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  Henry E. Hudson, Senior District Judge.  (3:21-cr-00134-HEH-1)

Submitted:  October 20, 2023                    Decided:  November 28, 2023

Before WILKINSON and KING, Circuit Judges, and FLOYD, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ON BRIEF:** Geremy C. Kamens, Federal Public Defender, Patrick L. Bryant, Appellate Attorney, John S. Martin, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.  Jessica D. Aber, United States Attorney, Kenneth R. Simon, Jr., Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Traquan Malik Henderson appeals his conviction entered pursuant to his guilty plea to possession of a firearm by a convicted felon. On appeal, he challenges the denial of his motion to suppress the firearm seized from him during an investigative stop. We affirm.

In reviewing the district court's ruling on a motion to suppress, we review the district court's factual findings for clear error, and its legal determinations de novo. *United States v. Cain*, 524 F.3d 477, 481 (4th Cir. 2008). The facts are reviewed in the light most favorable to the prevailing party below. *United States v. Jamison*, 509 F.3d 623, 628 (4th Cir. 2007).

An officer may conduct an investigatory detention or seizure only where the officer has "reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" *United States v. Burton*, 228 F.3d 524, 527 (4th Cir. 2000) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). Reasonable suspicion requires more than an "inchoate and unparticularized suspicion or 'hunch'"; however, reasonable suspicion may be based on inferences made on the basis of police experience. *Terry v. Ohio*, 392 U.S. 1, 27 (1968). When reviewing the constitutionality of an investigatory stop, we consider whether the totality of the circumstances gave the officer a "particularized and objective basis for suspecting a legal wrongdoing." *United States v. Mayo*, 361 F.3d 802, 805 (4th Cir. 2004) (internal quotation marks and citation omitted).

2

Here, Officer Moses Railey detained Henderson and recovered the gun, an attached extended magazine,[1] and a separate standard magazine when he saw Henderson walking down the street towards him.  We find that Railey had reasonable suspicion that Henderson was carrying a concealed weapon and/or a weapon with an extended magazine in violation of Virginia law.  *See United States v. Black*, 525 F.3d 359, 365 (4th Cir. 2008) (reasonable suspicion that weapon was concealed in pocket in Virginia tantamount to reasonable suspicion of criminal activity); *Mayo*, 361 F.3d at 807-08 (same).  This reasonable suspicion arose from the following circumstances that either the district court credited based on Railey's testimony, were undisputed at the hearing, or are commonsense conclusions:[2] (1) an extended magazine was clearly visible in Henderson's waistband; (2) a

---

[1] We use the term "extended magazine" to mean a magazine longer than a usual magazine.  However, we recognize that, under Virginia law, the length of the magazine is not determinative.  Instead, the relevant factor is how many rounds of ammunition the magazine holds.  *See* Va. Code Ann. § 18.2-287.4 (prohibiting, subject to exception, possession of certain loaded firearms equipped with a magazine that will hold more than 20 rounds of ammunition)  Nonetheless, because a longer magazine can hold more of the same type of ammunition than a shorter magazine, the length of the magazine is a factor to be considered regarding reasonable suspicion.

[2] Even though we review the district court's legal determination of reasonable suspicion de novo, "due weight" must be given to the "inferences drawn from th[e] facts by resident judges and local law enforcement officers." *Ornelas v. United States*, 517 U.S. 690, 699 (1996).  The district court's "commonsense" conclusions based on "the distinctive features and events of the community" and Railey's experience and expertise "provide a context" for the inferences drawn and "deserve deference."  *Id.* at 695, 699-700 (noting that the district court's assessment can be properly based on "background facts" that are not themselves the "subject of explicit findings").

3

small portion of the butt of a pistol appeared to be attached to the magazine;[3] (3) Henderson attempted to hide the magazine by pushing it into his pants and keeping his hand on it; (4) the "cant" of the magazine and the way it responded to Henderson's attempt to push it into his pants were indicative of the magazine being attached to a firearm;  (5) the officer's experience with the particular gun in question, Virginia firearm offenses, and the specific high-crime area gave him insight into how those violating Virginia firearm laws generally behaved; (6) those legally carrying do not generally attempt to hide a firearm; (7) standard magazines are less likely to extend past the butt of firearm; (8) magazines are generally not carried in the waistband, unless they are attached to a firearm; and (9) Henderson was in an area known specifically for gun violence.

Henderson first argues that Railey's "essentially instantaneous decision" resulted in a "knee-jerk response" that did not permit "the critical thinking necessary to separate innocent pedestrians from suspicious ones."  (Appellant's Br. (ECF No. 16) at 26-27). However, Henderson cites to no bright line rule regarding the amount of time required to develop reasonable suspicion.  Moreover, we have found that reasonable suspicion existed in a case where police seized a person suspected of trespassing "five to ten seconds" after seeing him.  *United States v. Bumpers*, 705 F.3d 168, 170 (4th Cir. 2013).

---

[3] The district court noted that Railey did not mention seeing any part of the firearm in his related state court testimony and ruled that its decision would be the same even if Railey had not seen the firearm.  While Henderson contends that the district court did not make a factual finding that Railey saw part of the firearm, the court's order makes it clear that the court made a factual finding that Railey saw what appeared to be a small portion of a firearm. (*See* J.A. 191 ("the relevant facts are as follows")).

Henderson next argues that we should consider Railey's changing story regarding whether he saw a firearm in Henderson's waistband. Specifically, in state court, Railey stated that he saw a magazine without mentioning whether he saw a part of the firearm or not. He also averred that he did not see the outline of a firearm. Conversely, in federal court, Railey testified that he saw a "small corner" of the butt of the firearm. (J.A. 126-27). Even assuming that these statements are in direct conflict, we find that court's decision to credit Railey's testimony at the federal hearing was not clearly erroneous, and we, therefore, defer to the district court's credibility determination. *See United States v. Pulley*, 987 F.3d 370, 376 (4th Cir. 2021) (holding that this court may not reverse the district court's finding of fact simply because it would have found differently); *see also United States v. Holly,* 983 F.3d 361, 363-64 (8th Cir. 2020) (noting that credibility determinations are "virtually unreviewable on appeal" and cannot be overturned absent finding that testimony is "so internally inconsistent or implausible on its face that a reasonable fact-finder would not credit it").

Henderson also relies on this court's recent decision in *United States v. Peters*, 60 F.4th 855 (4th Cir. 2023). Peters was walking down a sidewalk with another man, when officers approached them, accused them of trespass, and requested that they lift their shirts to show that they were unarmed. Peters was seized when he refused to do so. *Id.* at 859. The officer testified that he stopped Peters to investigate trespass based solely on Peters' earlier arrest for trespass. *Id.* at 864. We determined that a prior trespass arrest alone could not satisfy reasonable suspicion, and the fact that a confidential informant provided an unverified tip that Peters sold drugs in a building near which he was stopped did not

5

significantly elevate the officer's suspicion. *Id.* at 866. We ruled that the officer's suspicion that Peters was armed was improperly based on Peters' "skinny jeans" (known to be worn in order to "wedge" a firearm in the waistband), Peters' refusal to lift his shirt when requested to do so, and Peters' presence in a public housing community. Id. at 868.

We find that the cases are distinguishable on material bases. Most importantly, here, Railey saw an extended magazine clearly visible in Henderson's waistband. In addition, the officer saw a small portion of the butt of a firearm, and the angle of the magazine indicated that it was attached to a firearm. Further, after seeing the officers, Henderson attempted to hide the magazine from the officers' view. Finally, the officer testified that, based on his experience, those legally carrying firearms do not carry unattached magazines in their waistbands and do not attempt to hide their firearms. These additional factors, which when considered together are significant, were not present in *Peters*, where the officer did not see any physical indicia that Peters was concealing a firearm.

Accordingly, we affirm the denial of the motion to suppress. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*

6